HOFSTRA et al. v. GREAT NORTHERN LIFE INS. CO.

No. 32288. Sept. 24, 1946.

Rehearing Denied Nov. 19, 1946.

174 P. 2d 366.

Doerner, Rinehart & Stuart, of Tulsa, for plaintiffs in error.

Henry S. Griffing and John A. Johnson, both of Oklahoma City, for defendant in error.

RILEY, J. This is an appeal from an adverse judgment in an action commenced by the Evlo Refining & Marketing Company, a corporation, against Great Northern Life Insurance Company to recover on an alleged compromise settlement agreement. E. C. Hofstra, C. F. Hofstra, and E. M. Nary, as trustees for the creditors and stockholders of Evlo Refining & Marketing Company, were substituted as plaintiffs upon a showing that the charter of the plaintiff corporation had been canceled.

About May 18, 1938, defendant insurance company issued and delivered to plaintiff a policy of insurance designated as "Employer's Special Accident Policy," under which it insured Alfred Earl Gray, plaintiff's employee, for the benefit of plaintiff against loss from bodily injuries received by said employee through accidental means while in the employ of plaintiff and arising out of such employment. In the policy Edward C. Hofstra was named as beneficiary, but in the written application referred to in the policy and made a part thereof, Evlo Refining & Marketing Company was named as beneficiary and Edward C. Hofstra was named as employer. For temporary total disability the policy provided for weekly indemnity for not to exceed 300 weeks and for permanent total disability not to exceed 500 weeks, the weekly indemnity was $18.

About August 8, 1940, while the policy was in force, Gray received accidental bodily injuries in the course of and arising out of his employment. Defendant company paid indemnity down to and including February 28, 1941. Payment was by four drafts aggregating $571.95, made payable to the order of Evlo Refining & Marketing Company for Alfred Earl Gray.

On February 21, 1941, F. W. Brokaw,

adjuster for the insurance company, wrote E. C. Hofstra and Evla Company as follows:

"Dear Mr. Hofstra:

"As per an examination made by Dr. Wade Sisler, the same disclosed that Mr. Alfred Earl Gray is no longer totally disabled and is able to return to manual labor.

"I am enclosing herewith the draft which pays disability up to February 28.

"This terminates our liability in this case."

A controversy then arose between Evlo and the insurance company concerning further alleged liability of the insurance company. Evlo contended that it was entitled to further indemnity to the extent of about $1,000. After some negotiations plaintiff company employed S. J. Clendinning, an attorney, and placed the claim in his hands. Defendant was represented by its adjuster, F. W. Brokaw, and several attempts were made by them to adjust the matter, and out of those transactions this action arose.

Plaintiff in its petition alleged that on or about August 5, 1941, Brokaw, acting for defendant, stated to plaintiff's representative, Clendinning, that defendant would pay plaintiff the sum of $750 in settlement of their differences, and that it was possible that defendant might pay a small sum in excess of $750, but that he, Brokaw, was not authorized to pay anything in excess of $750 but that he would consult with Henry Griffing, chief counsel for defendant, to determine whether the insurance company would authorize an increase above the $750; that it was then and there agreed that Brokaw was to return to Oklahoma City and consult Griffing concerning the matter of increase, but that in the event an increase could not be obtained, said sum of $750 was acceptable to and was accepted by plaintiff, and that in the event no increase could be obtained

Brokaw was to forward draft in the sum of $750 in favor of plaintiff and a form of release, to be executed by plaintiff by Vice President E. C. Hofstra, of the difference between the parties; that Brokaw did return to Oklahoma City and later advised Clendinning that Griffing would not consent to the payment of any sum in excess of $750, and sent to Clendinning a form of release along with a draft in favor of plaintiff "for Alfred Earl Gray" in the amount of $750 and requested that plaintiff withhold cashing the draft until the release was properly executed; that shortly after the receipt of said draft and request, Clendinning orally advised Brokaw that said settlement of $750 was agreeable to and accepted by plaintiff and that he would procure proper execution of the release; that thereupon Clendinning did procure the execution of the release and did, on or about October 15, 1941, advise Brokaw orally and by letter that he had procured such release and advised Brokaw that plaintiff preferred to have the draft made payable to plaintiff as originally agreed upon and not to plaintiff "for Alfred Earl Gray," and requested Brokaw to send him another check payable to plaintiff and that he would return the draft which had been sent to Clendinning; that shortly thereafter Brokaw again came to the office of Clendinning and stated that the draft was not made payable as originally agreed upon and requested Clendinning to deliver the same to him (Brokaw) and that he would procure and send to Clendinning another check or draft in accord with their agreement, payable to plaintiff without the words "for Alfred Earl Gray"; that thereupon Clendinning did deliver a draft to defendant, through Brokaw, with the understanding that if the defendant would not issue another check or draft, then the draft so delivered to Brokaw was to be returned to Clendinning and plaintiff would accept it as made out; that after the dilivery of said draft to Brokaw, defendant refused and still refuses to make, issue, and deliver a new check or draft, and refused and still refuses

to return the draft delivered to Brokaw, and refused and still refuses to pay plaintiff the $750 agreed upon.

Defendant answered denying the authority of Brokaw to make the compromise settlement alleged and affirmatively alleged that an offer was made to pay plaintiff and Alfred Earl Gray $750 in consideration of delivery to defendant of a full, final, and complete release duly executed by plaintiff and by said Alfred Earl Gray; that plaintiff rejected said offer and was unable to deliver a release from Alfred Earl Gray. The answer further alleged that it did not admit that any compromise agreement was entered into, but if such was made, plaintiff was not in good faith in making the same in that the policy was an indemnity policy and plaintiff did not in fact intend to pay said Alfred Earl Gray and did not make any payments to said Gray for which it was not fully reimbursed. Reply was by general denial.

The issues were tried to a jury. At the close of all the evidence plaintiff requested the court to instruct the jury to return a verdict for plaintiff; defendant requested the court to direct a verdict for defendant. Both requests were denied and the court submitted the issues to a jury under instructions not excepted to by either party. Verdict and judgment were for defendant, and plaintiff appeals.

Assignments of error relied upon are that the court erred in refusing to direct a verdict for plaintiff as requested, and that the verdict and judgment are not sustained by sufficient evidence and are contrary to law. This calls for a review of all the evidence on all controversial issues.

On the question of lack of good faith to execute a settlement agreement there is no conflict in the evidence, and the evidence shows such authority.

On th question of lack of good faith on the part of plaintiff there is no evidence to show bad faith.

But there is conflict in the evidence on the question of an offer of settlement by defendant and acceptance of the offer as made by the plaintiff. In the transaction of August 5, 1941, when it is claimed the settlement agreement was made, no one was present except Clendinning and Brokaw. Clendinning testified:

"In this conversation, Brokaw told me that he would pay me $750 and I told him that I would accept the $750 on behalf of the Evlo Refining Company and he told me that he would have to go to Oklahoma City and would send me the draft and releases out to me. Q. (By Mr. Doerner) Was there anything said in that conversation as to the wording of the draft? A. There wasn't anything said, other than he wanted to settle with the Evlo Refining Company for $750 and— . . . Q. Was there any further conversation that you had with Brokaw with reference to this settlement? A. Yes, sir, there was. Q. Just state to the court and jury what it was. A. At the time he told me, 'I will pay $750,' I believe he said, 'We will pay $750,' and I told him that I would accept it on behalf of the Evlo. I asked him when he went back—he told me he would have to go back to Oklahoma City to get the draft and to get the release for me to sign and I told him all right, and when he went back, if he could pay any more than $750, that I would appreciate it; that I have been to an awful lot of trouble in this case, or words to that effect. Q. And what did he say to you in that conversation in response to what you told him? A. He said that he would do that and he said that if he could not get them to raise it, that he would mail me the draft for $750 and a release covering this case."

Brokaw testified:

"Q. And when you talked with Judge Clendinning about this matter, you told him, did you not, that you would settle this matter for $750? A. I didn't say I would settle it. I says, 'Offer a settlement'. Q. You made him an offer of settlement for $750? A. That is right. . . . Q. During your conversation with Judge Clendinning in Tulsa, on or about August 5th of 1941, was it stated whether or not the Evlo Refining & Marketing Company would be willing to ac-

cept $750 in settlement of the claim? A. It was not so stated. Q. At the time you left Tulsa to return to Oklahoma City, did you know whether or not the Evlo Refining & Marketing Company would accept such a figure? A. I did not. . . . A. Well, I want to take this opportunity of clearing up a matter; that it is to the best of my knowledge that Judge Clendinning was advised prior to the issuing of this draft that the releases would have to be signed by the corporation, and we had a form of release to be used for the employer, and then we required this release, and the draft was to be payable to the Evlo Refining & Marketing Company for Gray".

The record shows that after this conversation Brokaw returned to Oklahoma City and August 7, 1941, mailed Clendinning a draft and form of release to be executed by plaintiff, together with a letter as follows:

"Great Northern Life Insurance Company, Life, Accident and Health Insurance.

"Branch Office, Petroleum Building, Oklahoma City, Okla.

"Rollin B. Smith        August 7, 1941
"State Manager

"Judge S. J. Clendinning,
"708 Thompson Building
"Tulsa, Oklahoma.

In re: Alfred Earl Gray

"Dear Judge:

"On my return to Oklahoma City today, I discussed this case with our general counsel, Mr. Henry Griffing, and he was not in favor of paying an amount in excess of $750.00. I am inclosing a release and draft. This release will have to be signed by the corporation with the signature of the President and Secretary, and the draft is not to be cashed until this release has been duly executed and the policy No. 8420693 has been mailed to me.

"Want to take this opportunity to thank you for past courtesies extended to me.

"Yours very truly,
"(Signed) F. Warren Brokaw
"F. Warren Brokaw".

The draft enclosed was in the following form:

"Claim Draft.

"Great Northern Life Insurance Company

"Incorporated under the Insurance Laws of the State of Wisconsin No. 129864

"Chicago, Aug 9, 1941 Claim No. 221867

"When Receipt on Reverse Side is properly signed by Insured

"Pay to the Order of Evlo Refining & Marketing Co.,

"For Alfred Earl Gray, $750.00

"Seven Hundred Fifty no/100_____ _____Dollars

"Present through

"Harris Trust and Savings Bank

"Chicago, Illinois

        "F. Warren Brokaw
        "Claim Auditor."

On the back thereof was a form of receipt for $750 and a general and specific release and discharge of all claims under said policy, with blank space for "Insured's Signature".

The record further shows that Mr. Clendinning kept the draft and release until about October 15, 1941, at which time he wrote Brokaw as follows:

"Dear Mr. Brokaw:

"This will advise that I have at last got Mr. Hofstra to agree to settle the Gray case for $750.00. He has signed the release you furnished me.

"The only thing wrong is we do not like this check because it is made payable to the order of the Evlo Refining & Marketing Company for Alfred Gray. We think it should be made payable to the Evlo Refining & Marketing Company as settlement of our policy and not for Gray. As you know, we can't settle with Gray for this amount of money.

"Please send me another check and I will return this check together with the release."

A short time thereafter Brokaw again went to Clendinning's office in Tulsa. As to what occurred at that time Clendinning testified:

"Q. And do you remember the substance of that conversation, Judge? A. Yes, sir, I do. Q. Will you tell the court and jury what it was, please, sir? A. Brokaw came into the office and I had my file before me, in which I had this release signed by the Evlo Refining Company by E. C. Hofstra and I had the draft and I said, 'Mr. Brokaw, I have your—I received your draft here and it has the words 'for Alfred Gray', I said, 'You remember that you have heretofore been unable to settle with Gray in this matter and you know that I am being sued by Gray for $40,000 and I didn't want this—I don't want anything in here that would interfere with my case with Gray, but, I said, 'Now, I want it definitely understood that if you don't want to remove those words, that we are accepting it as it is', and he told me—I told him—I said 'Now, if you will, as a favor to me, remove those words, I will appreciate it' and he told me that he thought that they might be able to do that and he said, 'Would you mind if I take this draft with me to Oklahoma City and talk to Mr. Griffing, the general counsel for my company?' I said, 'I don't mind you taking it over there with the understanding that if you are unable to remove the words, that you will return it to me because I don't want to go through with this settlement again and I am unwilling to accept it as it is unless you are able, as a favor to me, to remove those words'. . . . Q. You did deliver the draft to him? A. At his request. He said, 'I will tell you what I will do, if it is all right for you to let me take this draft with me, I will see if I can't get that out'. I said, 'Now, listen, I would not go through with this settlement again for all there is in it and I want you to give me the draft whether or not, because I will accept it just like it is. Q. When you talked to him, when he came over, you told him that you would take the draft just like it was? A. Absolutely. Q. As it is now? A. Absolutely."

Brokaw testified:

Q. Then, did you get the draft? A. I got the draft; I went to Tulsa and got the draft then. . . . Q. At the time that you got this $750 draft at Mr. Clendinning's office, was there any conversation as to whether or not you would return this same draft to Judge Clendinning? A. No. Q. Did he want to keep this draft that we have here, Defendant's Exhibit 'E'? A. No. Q. The truth is that he wanted a draft in a different form, is that right? A. Yes, sir."

It will thus be seen that there is material conflict as to what took place and what was said by the parties on both occasions.

It is well settled that where there is any competent testimony to establish a conflict in the evidence on any material issue, the matter is properly left for the consideration of the jury and the jury's verdict will not be disturbed by this court. Walker v. Oklahoma Natural Gas Co., 188 Okla. 241, 107 P. 2d 997.

"Where a compromise is alleged, the determination of all controverted questions of fact is for the jury. Thus on conflicting evidence it is for the jury to determine whether there was an agreement of compromise . . .". 15 C.J. S. p. 784.

On the other hand, where the evidence is clear and undisputed, or leaves no room for opposing inference, it is a question of law for the court to determine the issues. 15 C.J.S. p. 786. There being this material conflict in the evidence, there was no error in denying the request for a directed verdict and submitting the case to the jury. The verdict of the jury is conclusive on the controverted matter and the judgment is affirmed.

GIBSON, C. J., HURST, V.C.J., and OSBORN and DAVISON, JJ., concur. BAYLESS and WELCH, JJ., dissent.